IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01924-MSK-KMT

KENNETH L. SMITH

        Plaintiff,

v.

MICHAEL L. BENDER,
NATHAN B. COATS,
GREGORY J. HOBBS, JR.,
REBECCA LOVE KOURLIS,
ALEX J. MARTINEZ,
NANCY E. RICE,
MARY J. MULLARKEY,
JOHN W. SUTHERS,
FREDRICK C. HAINES,
JOHN DOES 1-99, and
THE UNITED STATES OF AMERICA,

        Defendants.

---

## OPINION AND FINAL ORDER GRANTING MOTIONS TO DISMISS
## AND DISMISSING CLAIMS WITH PREJUDICE

---

**THIS MATTER** comes before the Court pursuant to Defendant United States of America's Motion to Dismiss (**# 6**), the Plaintiff's response (**# 13**), and the United States' reply (**# 25**); Defendants Rice, Bender, Coats, Hobbs, Kourlis, Martinez, Mullarkey (collectively, the "Supreme Court Defendants"), Haines, and Suthers' (collectively, with the Supreme Court Defendants, the "State Defendants") Motion to Dismiss (**# 7**), the Plaintiff's response (**# 14**), and the State Defendants' reply (**# 31**); the Plaintiff's Motion for Declaratory Relief (**# 12**), Defendant United States' response (**# 16**), and the Plaintiff's reply (**# 17, 21**); the Plaintiff's

Motion for Injunctive Relief (# **18**), Defendant United States' response (# **27**), the State

Defendants' response (# **36**), and the Plaintiff's reply (# **33, 45**); the Plaintiff's Motion for Relief

Pursuant to 28 U.S.C. § 292 (# **19**), Defendant United States' response (# **28**), and the State

Defendants' response (# **34**); the Plaintiff's Motion for the Taking of Judicial Notice (# **20**),

Defendant United States' response (# **26**), the State Defendants' response (# **35**), and the

Plaintiff's reply (# **44**); Defendant United States' Motion to Dismiss for Lack of Jurisdiction

(#**37**), and the Plaintiff's response[1] (# **46**); the State Defendants' Motion to Dismiss for Lack of

Jurisdiction (# **39**), the Plaintiff's response (# **48, 49**), and the State Defendants' reply (# **52**);

and the Plaintiff's Motion for Recusal (# **43**), Defendant United States' response (# **47**), and the

Plaintiff's reply (# **51**).

## BACKGROUND

According to the original *pro se* Complaint (# **1**), the Plaintiff was a litigant in the case of

*Smith v. Mullarkey*, Denver District Court Case No. 02-cv-127. In that case, the Plaintiff alleged

claims under 42 U.S.C. § 1983, among others, relating to the denial of his admission to the bar of

the State of Colorado. The Denver District Court dismissed the Plaintiff's case, ostensibly on

the grounds that the Colorado Supreme Court has the exclusive jurisdiction over matters

involving the licensing of persons to practice law. The Plaintiff filed a timely appeal of the

dismissal to the Colorado Court of Appeals, but on August 16, 2005, the Court of Appeals found

that it lacked jurisdiction over the case – presumably for the same reason stated by the District

---

[1]Instead of properly linking the Plaintiff's response to Defendant United States' Motion
to Dismiss for Lack of Jurisdiction, the docket mistakenly links this filing to the Supreme Court
Defendants' motion. The Clerk of the Court shall modify docket # 46 to link to docket # 37
instead of docket # 39.

Court – and transferred the case to the Colorado Supreme Court pursuant to C.R.S. § 13-4-110(1)(a). Although each of the Justices of the Colorado Supreme Court were named as parties in the case (apparently due to their oversight of the attorney admissions process to which the Plaintiff objected), it found that "[b]y operation of the Rule of Necessity, Canon 3F," the court could nevertheless hear the matter. *Smith v. Mullarkey*, 121 P.3d 890, 891 n. 1 (Colo. 2005). In that same order, the Court affirmed the decision of the District Court on its merits. *Id.* at 892.

The Complaint **(# 1)** in this action expressly states four causes of action: (i) a claim pursuant to 42 U.S.C. § 1983 that each of the Defendants violated his constitutional rights under Due Process and Equal Protection clauses; (ii) a claim captioned as one for "denial of access to the courts," but which appears to assert a civil conspiracy among the Defendants, as a result of which the Plaintiff was injured because as he was unable to obtain the relief he sought in *Smith v. Mullarkey*; (iii) a claim for "supervisory liability," apparently asserted only against Defendant Suthers (who, as Attorney General of the State of Colorado, appeared on behalf of the defendants in *Smith v. Mullarkey* and allegedly oversaw the actions of Defendant Haines, the Assistant Attorney General who actually defended the case) because he failed to take effective remedial action to prevent Defendant Haines from engaging in a constitutional violation; and (iv) a claim against the United States, alleging that it has failed to provide the Plaintiff with a remedy for his grievances, thereby violating treaty obligations created by the International Covenant on Civil and Political Rights ("ICCPR"). The Plaintiff seeks money damages and unspecified injunctive relief.

Both the United States **(# 6)** and the State Defendants **(# 7)** move to dismiss the Complaint. The United States' motion argues: (i) that the Court lacks subject matter jurisdiction

because the Plaintiff has not identified an applicable waiver of sovereign immunity; (ii) that the Court lacks subject matter jurisdiction because the Plaintiff's claims present a non-justiciable political question; (iii) that the doctrine of *jus cogens*[2] does not create jurisdiction over the Plaintiff's claims; and (iv) that the Plaintiff fails to state a claim upon which relief may be granted.

The State Defendants' motion raises six arguments: (i) that the Court lacks subject matter jurisdiction over the Plaintiff's claims because the claims are barred by the *Rooker-Feldman* doctrine; (ii) that the claims against the Colorado Supreme Court Justices are barred as a result of absolute judicial immunity; (iii) that Defendants Suthers and Haines are entitled to qualified immunity, in that the Plaintiff fails to adequately allege a constitutional violation or show that such a right was clearly established at the time of the alleged violation; (iv) that Plaintiff fails to state a claim against Defendant Haines because the Complaint fails to allege Defendant Haines' personal participation in any constitutional deprivation; (v) that the third claim, asserted against Defendant Suthers, alleges only vicarious liability and thus, fails to state a claim; and (vi) that the claims are barred by the statute of limitations.

The Plaintiff filed a Motion for Declaratory Relief (**# 12**), which appears to either be a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or a motion for summary judgment pursuant to Fed. R. Civ. P. 56, as to the ICCPR claim. The Plaintiff argues that the he has standing to bring a claim under the ICCPR, that the United States' contention that it does consider the ICCPR to be self-executing is inconsistent with, and thus severable from, the

---

[2]A mandatory norm of general international law from which no two or more nations may exempt themselves or release one another. *Black's Law Dictionary* at 864 (7th Ed.).

4

treaty's terms; and that the treaty waives the United States' sovereign immunity.  It is not clear whether the Plaintiffs' motion seeks relief in the form of a judgment in his favor on his ICCPR claim, or seeks an alternative remedy – namely, that the Court declare that "the United States in in violation of international law," such that he could then seek legislative relief.  *Docket* # 12 at 16.

Separately, the Plaintiff filed a Motion for Injunctive and/or Declaratory Relief (**# 18**). This motion appears to request relief in the form of a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).  The Plaintiff does not specify the terms of the injunction he seeks, but the Motion appears to seek two forms of injunctive relief: (i) an order "requiring Chief Justice Mullarkey to appoint judges of the Colorado Court of Appeals to the [Colorado Supreme Court] for purposes of deciding the matter of jurisdiction over his appeal pursuant to C.R.S. § 13-4-110"; and (ii) an order "requiring Ms. Mullarkey to issue an opinion retracting the original opinion issued in *Smith v. Mullarkey, supra.*, and explain why it is being retracted."  *Docket* # 18 at 11.  The Plaintiffs' Motion argues that he can establish each of the four traditional elements required to obtain injunctive relief.

The Plaintiff also moves for relief pursuant to 28 U.S.C. § 292 (**# 19**).  The precise nature of this motion is somewhat difficult to discern.  To some extent, it does not appear that this motion is specifically directed to this case; it appears to suggest that this Court "may be called upon to opine not only on the propriety of the conduct of the Chief Judge of this District and several members of the Court of Appeals for the Tenth Circuit," even though these individuals are not parties to this action, are not referenced in the Complaint, and otherwise have no alleged involvement with this case whatsoever.  The remainder of the motion is equally unclear: the

Plaintiff extensively recites generalized criticism as to the judicial system as a whole; alleges that meaningful appellate review is unavailable; accuses unspecified "federal judges" of engaging in criminal deprivation of constitutional rights; and contends that "this District" is "waging a war against *pro se* litigants." The Motion appears to request the recusal of "every judge in this District (or for that matter, in this Circuit) with regard to this case" and that "this case should be transferred out of the District." *Docket* # 19 at 19. As alternative relief, the Plaintiff requests that "all judges with conflicts recuse themselves." *Id.*

The Plaintiff also moves **(# 20)** for this Court to take judicial notice under Fed. R. Evid. 201, of the following facts: (i) the provisions of C.R.S. § 16-6-201; (ii) the Colorado Supreme Court's published opinion in *Smith v. Mullarkey*; (iii) the provisions of C.R.S. § 13-4-101; (iv) Canon 3 of the Colorado Code of Judicial Conduct; (v) the provisions of C.R.S. § 13-4-102(1); (vi) that date of the Plaintiff's Notice of Appeal to the Colorado Court of Appeals in *Smith v. Mullarkey*; (vii) the contents of that Notice of Appeal; (viii) the provisions of C.R.S. § 13-4-110(1)(a); (ix) the August 16, 2005 Order of the Colorado Court of Appeals transferring the case to the Colorado Supreme Court, and the August 18, 2005 Order of the Supreme Court accepting the transfer; (x) the Plaintiff's Amended Complaint in the *Smith v. Mullarkey* case; and (xi) the June 30, 1999 Report of the Attorney Admissions Hearing Panel recommending that the Plaintiff's application to the Bar of Colorado be denied. Interspersed with the requests for the taking of judicial notice are arguments by the Plaintiff as to the significance that should be afforded each document.

On February 6, 2008, the Plaintiff filed a *pro se* Amended Complaint **(# 32)**. The Amended Complaint does not appear to modify any of the first three claims asserted by the

Plaintiff, but elaborates substantially on the basis for the Plaintiff's fourth claim under the ICCPR.  As best the Court can determine, the Plaintiff alleges that the conduct violating his rights under the ICCPR include: an alleged criminal conspiracy, involving both the Defendants here and other non-party judges of the District of Colorado and the 10th Circuit Court of Appeals, to violate the Plaintiff's constitutional rights; the failure of non-party judges of the District of Colorado and 10th Circuit Court of Appeals to follow controlling Supreme Court precedent when adjudicating cases brought by the Plaintiff; and the "Systemic Discrimination Against *Pro Se* Litigants," similar to that addressed by the Plaintiff in Docket # 19.  The Amended Complaint also adds a new claim for relief, which purports to seek "declaratory and/or injunctive relief, as appropriate," but which cites only to the Declaratory Judgment Act, 28 U.S.C. § 2201, and requests "an appropriate declaration of his rights under the Bill of Rights and/or the [ICCPR]."

The United States moved to dismiss **(# 37)** the Amended Complaint, alleging essentially the same arguments as in its prior Motion to Dismiss.  The State Defendants moved to dismiss **(#39)** the Amended Complaint, raising effectively identical arguments to those presented in their earlier motion.

The Plaintiff filed a Motion to Recuse **(# 43)**.  In this motion, he argues that the undersigned is also adjudicating another case in which he is the plaintiff and the "United States District Court for the District of Colorado" is named as a defendant, *Smith v. Ebel*, D.C. Colo. Case No. 08-cv-00251-MSK-KMT.  According to the Motion to Recuse, the relief sought in *Smith v. Ebel* is an "injunction compelling [District of Colorado] judges who handle this case to adhere to a minimum standard of conduct," and that "For this Court to issue such injunctive

relief, it would have to issue that injunction to itself. . . and would logically warrant this Court's recusal in this matter."

<u>ANALYSIS</u>

**A. Standard of review**

Because the Plaintiff appears *pro se*, the Court construes his pleadings liberally.[3] *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**B. Motion to Recuse/Motion for Relief Under 28 U.S.C. § 292**

Logically, the Court must first consider the Plaintiff's motion requesting that the undersigned recuse from the case. 28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The

---

[3]Admittedly, one can legitimately question whether the requirement of construing *pro se* pleadings liberally applies in this case. Here, the Plaintiff is not a layperson, or otherwise unschooled in the law. Indeed, the issue underlying the *Smith v. Mullarkey* action was the Plaintiff's belief that he is entitled to be enrolled in the bar of the State of Colorado. In that respect, it might be more appropriate to subject the Plaintiff's pleadings to the same scrutiny applied to those of registered attorneys. Nevertheless, in the absence of authority compelling stricter review in these circumstances, the Court will liberally construe the Plaintiff's *pro se* pleadings.

inquiry to be made in such a circumstances is "whether a reasonable person, <u>knowing all the circumstances</u>, would expect that the judge would have actual knowledge of his interest or bias in the case." *Sao Paulo State of Federative Republic of Brazil v. American Tobacco Co.*, 535 U.S. 229, 232-33 (2002) (emphasis in original). The fact that a judge may have formed opinions based on facts asserted or events occurring in other proceedings does not constitute grounds for recusal, except where the judge displays deep-seated favoritism or antagonism that would make fair judgment impossible. *U.S. v. DeClerck*, 252 Fed.Appx. 220, 223 (10th Cir. 2007) (unpublished), *quoting Liteky v. U.S.*, 510 U.S. 540, 555 (1994). Similarly, a judge is necessarily required to faithfully perform the duties of the office. Such performance may often take the form of unfavorable rulings against a particular litigant, or even referrals of an attorney to disciplinary authorities for review; in the absence of a particularized showing of bias or prejudice, the discharge of these kinds of duties does not arise to grounds for recusal. *U.S. v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006); *see also Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for bias." Unsubstantiated suggestions, speculations, and opinions of a litigant that bias exists is insufficient to warrant recusal; indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse the law and facts require." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006).

The Plaintiffs' Motion to Recuse, on its face, does not assert that the undersigned holds any personal bias, or otherwise cites to facts that allegedly compromise the undersigned's ability to objectively adjudicate the claims in <u>this action</u>. Rather, the Plaintiff points to the fact that (until recently), the undersigned was also the presiding judge in *Smith v. Ebel*, D.C. Colo. Case No. 08-cv-00251-MSK-KMT, an entirely distinct case in which the Plaintiff has sued, among

others, the 10th Circuit Court of Appeals, the United States District Court for the District of Colorado, the Colorado Supreme Court, and the Colorado Court of Appeals, each court having been simply named as a collective entity. In that case, the Plaintiff complained of, among other things, courts' issuance of "non-precedential" unpublished opinions, "systemic discrimination" against *pro se* litigants, and judges "knowingly misapply[ing] binding precedent." As relief in *Smith v. Ebel*, the Plaintiff sought injunctive relief from this Court, prohibiting the named defendant courts from engaging in the challenged practices. The instant Motion to Recuse in this case notes the undersigned's assignment to preside over *Smith v. Ebel*; notes that, were the Court to grant the relief sought in that case, the undersigned "would have to issue that injunction to itself and be responsible for policing its compliance with its own order"; and thus, argues that the situation "would logically warrant [the undersigned]'s recusal in this matter."

On its face, the Plaintiffs' argument for recusal is without merit. The fact that the Plaintiff has requested paradoxical relief in another action is of no significance in this case. The claims and relief sought here are discrete from the claims and relief sought in *Smith v. Ebel*, such that any grounds for recusal that might exist in *Smith v. Ebel* do not exist here. Curiously, the Plaintiff makes no argument that recusal is warranted here based on the particular claims asserted or relief sought in <u>this</u> case. Accordingly, the undersigned finds no grounds to warrant recusal under § 455 in this case.

There have recently been developments in the *Smith v. Ebel* case that warrant brief comment, but which do not change the outcome here. In late May 2008, the Plaintiff filed an Amended Complaint in *Smith v. Ebel* that, for the first time, specifically named the undersigned as a defendant, ostensibly "in her official capacity as Judge." By order dated June 27, 2008, the

undersigned recused in that case, noting that although recusal was not necessarily warranted under § 455(a), *Switzer v. Berry*, 198 F.3d 1255, 1257-58 (10th Cir. 2000) ("the statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice"), recusal was warranted because the undersigned had been rendered a witness in the case by virtue of a dispute over the sufficiency of service. Based on the reasoning of *Switzer*, the Court finds that the Plaintiff's indiscriminate, potentially frivolous, attempt to name the undersigned as a party in *Smith v. Ebel* – apparently for the sole purpose of forcing recusal – does not amount to a circumstance in which a reasonable person, with full knowledge of the circumstances, would have cause to question the undersigned's impartiality with respect to the allegations in this case. *See also Smith v. United States Court of Appeals*, 484 F.3d 1281, 1283 n. 1 (10th Cir. 2007) (absent "pertinent, particularized allegations of bias," naming of judge as party is insufficient to disqualify judge from hearing case). Nor does the undersigned's decision to recuse in *Smith v. Ebel* – a recusal focusing on the fact that the undersigned had been rendered a witness on a disputed fact in that case – warrant a logical inference that recusal is also warranted here.

Accordingly, the Plaintiff's Motion for Recusal is denied. For the same reasons, the Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 292, to the extent it can reasonably be understood to request recusal of the undersigned, is denied.

**C. Motions to Dismiss for Lack of Subject Matter Jurisdiction/Motion to Take Judicial Notice**

Next, the Court must consider the motions challenging the sufficiency of subject-matter jurisdiction in this case.

The party asserting the existence of subject matter jurisdiction– in this case, the Plaintiff– bears the burden of proving that such jurisdiction exists. *Montoya v. Chao*, 269 F.3d 952, 955 (10th Cir. 2002). A Fed. R. Civ. P. 12(b)(1) challenge to the sufficiency of subject matter jurisdiction generally takes one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, the parties do not appear to dispute the accuracy of the facts alleged by the Plaintiff to the procedural history of the *Smith v. Mullarkey* case, nor the existence of certain cited Colorado statutes. To the extent that it is necessary for purposes of this decision, the Court grants the Plaintiff's Motion To Take Judicial Notice with regard to the various orders entered in that action, as well as of the statutes the Plaintiff relies upon. (The Court disregards the Plaintiffs' characterizations of those orders and statutes in his motion, because the orders and statutes speak for themselves.)

1. Defendant United States' claim of sovereign immunity

Defendant United States argues that the Court lacks subject matter jurisdiction to consider the claims against it because the Plaintiff cannot demonstrate a waiver of the United States' sovereign immunity. The Plaintiff invokes 28 U.S.C. § 1331 as the basis for his claim of federal subject matter jurisdiction, arguing that his claims against the United States "aris[e] under the Constitution, laws or treaties of the United States." However, § 1331 will only confer

subject matter jurisdiction on this Court where some other authority explicitly waives the United States' sovereign immunity. *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006); *Harrell v. U.S.*, 443 F.3d 1231, 1234 (10th Cir. 2006) ("absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States).

The Plaintiff contends that the ICCPR is, itself, a waiver of the United States' sovereign immunity. Greatly summarized, the Plaintiff's argument on this point is that, under principles of international law, the U.S. is prohibited from invoking its own internal law to avoid its obligations under the ICCPR, and thus, cannot rely upon principles of sovereign immunity to avoid suits invoking the ICCPR's protections.

The United States ratified the ICCPR in 1992, but did so under an express reservation that the provisions of the treaty "are not self-executing." *See generally Ralk v. Lincoln County*, 81 F.Supp.2d 1372, 1380 (N.D. Ga. 2000) (discussing history of ICCPA). The express purpose of the reservation was "to clarify that the Covenant will not create a private cause of action in the U.S. courts." *Id.*, *citing* Senate Committee on Foreign Relations Report on the International Covenant on Civil and Political Rights, 31 I.L.M. 645, 652 (1992). Dozens of courts, including the 10th Circuit, have found that, due to either the reservation, the ICCPR's non-self executing nature or both, the treaty does not authorize a private right of action. *Hain v. Gibson*, 287 F.3d 1224, 1243 (10th Cir. 2002) ("Even if . . . the above-quoted reservation were void . . . it is clear that the ICCPR is not biding on the federal courts"); *see also Leombruno v. Craven*, 2007 WL 2265119 (D. Id. 2007) (unpublished); *Clancy v. Office of Foreign Assets Control*, 2007 WL 1051767 (E.D. Wis. 2007) (unpublished); *Martinez-Lopez v. Gonzales*, 454 F.3d 500, 502 (5th

Cir. 2006); *Brightwell v. Lehman*, 2006 WL 931702 (W.D. Pa. 2006) (unpublished); *Reaves v. Warden*, 2002 WL 535398(M.D. Pa. 2002) (unpublished); *Beazley v. Johnson*, 242 F.3d 248, 267 (5th Cir.2001); *Buell v. Mitchell*, 274 F.3d 337, 372 (6ᵗʰ Cir. 2001); *Ralk*, 81 F.Supp. 2d at 1380; *Jama v. I.N.S.*, 22 F.Supp.2d 353, 365 (D. N.J.1998); *White v. Paulsen*, 997 F.Supp. 1380, 1387 (E.D.Wa.1998); *Igartua De La Rosa v. United States*, 32 F.3d 8, 10 n. 1 (1st Cir. 1994). By contrast, the Plaintiff has not cited to any decision concludting that the ICCPR to creates a private, enforcible right of action, independent of protections available under the United States Constitution.  Whether it is couched in terms of standing, sovereign immunity, or some other legal doctrine, the clear weight of authority is that "absent any further actions by Congress to incorporate [the terms of the ICCPR] into domestic law, the courts may not enforce them." *Jama*, 22 F.Supp.2d at 365.

The *Beazley* court addressed, at least incidentally, the Plaintiff's argument here – that the United States' reservation of rights under the ICCPR is inconsistent with the terms of the treaty, and thus, invalid.  *Beazley* noted that in 1994, the United Nations' Human Rights Committee commented on the expression of reservations under the ICCPR, suggesting that a reservation that was incompatible with the treaty's terms could be deemed severable, and the terms of the treaty would remain effective.  242 F.3d at 264-65.  In 1995, the Human Rights Committee "expressed its concern" that the United States' reservation was incompatible with the ICCPR and "recommended withdrawing that reservation."  *Id.* at 265 (internal punctuation omitted). However, as *Beazley* notes, the Human Rights Committee may have "suggest[ed]" or "recommend[ed]" that the U.S. withdraw the reservation, but that the Committee "declined to attempt either to void or to sever the reservation."  *Id.*  The court expressly rejected the argument

that the reservation "is invalid and must be severed," and found that "the reservation is valid." *Id.* at 266-67. Although *Beazley* arises in a different analytical context, the Court nevertheless finds that its reasoning and conclusions are persuasive. Accordingly, whether it be due to sovereign immunity, lack of standing, or some other principle, the Court lacks subject-matter jurisdiction over the Plaintiff's claim against the United States, and that claim is dismissed.

2. <u>Supreme Court Defendants' invocation of *Rooker-Feldman*</u>

The State Defendants contend that the Court lacks subject-matter jurisdiction over this case because, among other things, the Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. For reasons that will be explained in more detail herein, the Court considers this argument only as it relates to the Supreme Court Defendants.

The *Rooker-Feldman* doctrine is invoked where a party who lost a case in state court commences a proceeding in a federal trial court in which the party seeks what, in substance, would be appellate review of the state judgment, based on an argument that the judgment itself violated the losing party's federal rights. *Smith v. Mullarkey*, 67 Fed.Appx. 535, 537 (10th Cir. 2003). Because federal appellate review of state court judgments can only be obtained in the United States Supreme Court, 28 U.S.C. § 1257, the *Rooker-Feldman* doctrine prohibits lower federal courts from exercising jurisdiction over claims that were "actually decided" by the state court, as well as claims that are "inextricably intertwined" with claims decided by the state court. *Smith*, 67 Fed.Appx. at 537. A claim is "inextricably intertwined" with a state court judgment if the judgment caused, actually and proximately, the injury for which the federal plaintiff seeks redress. *Id.* at 538, *citing Kenmen Eng'g v. City of Union*, 314 F.3d 468, 475-77 (10th Cir. 2002).

Analysis of the *Rooker-Feldman* issue in this case need not be belabored, as the 10th Circuit in *Smith* has already affirmed the dismissal on *Rooker-Feldman* grounds of claims by the Plaintiff very similar to those presented herein.  In that case, the Plaintiff raised "twenty claims for relief for alleged violations of federal law and of plaintiff's constitutional rights" relating to the Colorado Supreme Court's initial decision to deny the Plaintiff's application for admission to the bar.  *Id.* at 536.  The 10th Circuit found that "each of the plaintiff's claims is inextricably intertwined with the state court's denial of his application for admission to the state bar."  *Id.* at 538.  It explained that, "[d]espite [the Plaintiff's] protests to the contrary, it is clear that plaintiff's injury resulted from the state-court judgment, that his complaint in federal court sought only to upset that judgment, and that the resolution of his federal claims necessarily required consideration of the underlying state-court decision."  *Id.*  As a result, the 10th Circuit found that the claims were properly dismissed for lack of subject-matter jurisdiction on *Rooker-Feldman* grounds.  *Id.*

It logically follows that if the Plaintiff's lawsuit attacking the Colorado Supreme Court's decision on his bar application is barred by the *Rooker-Feldman* doctrine, the instant lawsuit would also be barred.  Like the prior case, this action alleges that the Plaintiff was injured as a result of a ruling by the Colorado Supreme Court; specifically, the Plaintiff's alleged injuries here arise from the Colorado Supreme Court's affirmance of the Colorado District Court's dismissal of his claims.  121 P.3d at 892.  It is obvious that the relief the Plaintiff seeks in this case can only be awarded by upsetting the Colorado Supreme Court's decision.  Put differently, it is impossible to honor the Colorado Supreme Court's ruling dismissing the Plaintiff's claims, but simultaneously hold that the Plaintiff's constitutional rights were violated by that dismissal.

Finally, it is apparent that consideration of the Plaintiff's claims here will necessarily require the Court to examine the sufficiency of the Colorado Supreme Court's ruling, as the Plaintiff's central premise in this action is that the ruling is jurisdictionally defective. Accordingly, the Court finds that the claims against the State Defendants are barred by the *Rooker-Feldman* doctrine.

The Plaintiff argues that recent Supreme Court precedent calls the continuing vitality of the *Rooker-Feldman* doctrine into doubt, and suggests that to the extent the doctrine remains viable, it "violates the guarantee of due process of law and is thus unconstitutional." In support of his first premise, he points to *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) and *Lance v. Dennis*, 546 U.S. 459 (2006).

In *Exxon Mobil*, the Supreme Court observed that the *Rooker-Feldman* doctrine had been extended by the lower courts "far beyond the contours of the *Rooker* and *Feldman* cases." 544 U.S. at 283. In seeking to corral the doctrine, the Court held that it is applicable only in specific circumstances, that is "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. It specifically reversed a lower court's invocation of the *Rooker-Feldman* doctrine where the federal litigation was commenced defensively, while the state court proceedings were in process. The *Exxon Mobil* Court explained that "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292.

The Supreme Court revisited the *Rooker-Feldman* doctrine again the following year, in *Lance*. There, the state court conclusively resolved a lawsuit challenging a redistricting plan, and, later, a new suit on the same issue was filed by different parties in federal court. *Id.* at 459. The District Court dismissed the new suit under *Rooker-Feldman*, finding that the new plaintiffs, although not parties to the state court lawsuit, were nevertheless in privity with the losing side in that suit. *Id.* at 462. Once again, the Supreme Court "emphasize[d] the narrowness of the *Rooker-Feldman* rule," and repeated *Exxon Mobil*'s articulation of when the doctrine applies. *Id.* at 464. It found that the lower court had misapplied the doctrine, insofar as the doctrine cannot be applied against non-parties to the state suit, and that the court's reliance on privity principles conflated *Rooker-Feldman* with the analytically-distinct doctrine of preclusion. *Id.* at 465-66.

Obviously, the holdings of both *Exxon Mobil* and *Lance* are inapposite here – the *Smith v. Mullarkey* case was concluded long before the Plaintiff commenced this action, and the Plaintiff here was a party to the state court action. The Plaintiff's invocation of *Exxon Mobil* and *Lance* is premised upon a statement by Justice Stevens in his <u>dissenting</u> opinion in *Lance*. Justice Stevens criticizes the *Feldman* case as "incorrectly decided,"suggests that *Exxon Mobil* "finally interred the so-called *Rooker-Feldman* doctrine," and views the Court's decision in *Lance* as "properly disapprov[ing] of the District Court's resuscitation of a doctrine that has produced nothing but mischief for 23 years." 546 U.S. at 467-68. Beyond this passing observation, however, Justice Stevens' dissent does not discuss the *Rooker-Feldman* doctrine further. The Plaintiff appears to believe that Justice Stevens' dissenting opinion somehow vitiates the *Rooker-Feldman* doctrine in its entirety, but it is clear that neither *Exxon Mobil* nor

*Lance* do that.  Indeed, the majority opinions in both cases clearly recognize that the doctrine remains viable, especially in sutiuations such as this case.

The Plaintiff also argues that the *Rooker-Feldman* doctrine "violates the guarantee of due process of law and is thus unconstitutional."  In support of this proposition, he cites *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983).  The Plaintiff misreads *Wood*.  There, the court explained that *Rooker-Feldman* could only apply where the state-court loser had the opportunity to present his federal claims during the state proceeding.  *Id.*  "Interpreting *Rooker* to preclude a federal district court from considering an issue that the plaintiff had no reasonable opportunity to raise in state court," it explained, "might pose due process problems."  *Id.* (emphasis added).  Needless to say, *Wood* does not stand for the proposition that the *Rooker-Feldman* doctrine is unconstitutional.  Rather, it merely explains an additional element – the opportunity to have raised the federal issues in state court – that must be present before the doctrine can be applied.

Although the Plaintiff does not specifically argue the point, the Court assumes that his citation to *Wood* is an argument that, in fact, he did not have an opportunity to raise his federal issues in state court.  To the extent the Plaintiff makes such an argument, it is without merit.  The Colorado District Court order in *Smith v. Mullarkey* that the Plaintiff sought to appeal from expressly stated that the Colorado Supreme Court "has exclusive jurisdiction" over the Plaintiff's claims.  *See Docket* # 20-2 at 8-9.  In his Notice of Appeal to the Colorado Court of Appeals, the Plaintiff appears to have recognized the problem of whether the Colorado Supreme Court could assume jurisdiction over the claims, identifying as one of the issues on appeal to be "Whether the Colorado Supreme Court, consistent with the limited grant of jurisdiction of article VI, Section

6(2) of the Colorado Constitution and *People ex rel. City of Aurora v. Smith*, can lawfully assume exclusive jurisdiction over all aspects of Colorado's bar admission process." *Docket #* 20-2 at 5. Although this articulation of the issue cannot reasonably be read to raise a federal constitutional challenge to the propriety of the Colorado Supreme Court exercising jurisdiction over the claims in *Smith v. Mullarkey*, it is clear that the Plaintiff anticipated the possibility of the Colorado Supreme Court exercising allegedly improper jurisdiction over his claims, and that he had the opportunity to also raise identify his federal constitutional challenges to the possible assertion of such jurisdiction. Moreover, the Plaintiff has not disputed the State Defendants' assertion that, in seeking certiorari review from the U.S. Supreme Court, the Plaintiff specifically raised the same federal issues he presents here. *See Docket* # 52 at 3. Accordingly, the Court finds that the Plaintiff had a reasonable opportunity to raise any federal constitutional objections to the exercise of jurisdiction by the Colorado Supreme Court in the state-court proceedings, and thus, application of *Rooker-Feldman* is appropriate.

Finally, the Plaintiff raises the argument that *Rooker-Feldman* does not apply because there is no valid state court judgment in this case. This tautological argument assumes that the Colorado Supreme Court's judgment is invalid because that court lacked jurisdiction to decide the issue. Besides committing the logical fallacy of begging the question, the Plaintiff's argument on this point misconstrues the elements of the *Rooker-Feldman* doctrine. Neither the Supreme Court nor the 10th Circuit have ever required that the <u>validity</u> of a state court judgment be resolved before *Rooker-Feldman* could be invoked. *See e.g. Exxon Mobil*, 544 U.S. at 284 (referring only to "state court judgments," making no use of the word "valid"). By definition, <u>every</u> case in which *Rooker-Feldman* is properly invoked involves a state court judgment that the

plaintiff challenges as invalid; a claim that challenges the validity of the state judgment is the *sine qua non* that animates *Rooker-Feldman*'s concerns. If validity of the judgment was required before *Rooker-Feldman* could be invoked, there would be no need for the doctrine at all. Accordingly, the Court rejects the Plaintiff's arguments challenging the application of *Rooker-Feldman*, and finds that that doctrine compels the dismissal of the Plaintiff's claims against the Supreme Court Defendants for lack of subject matter jurisdiction.

3. <u>Defendants Haines and Suthers</u>

Arguably, the claims against Defendants Haines and Suthers are not implicated by the *Rooker-Feldman* doctrine, because they do not necessarily turn on the invalidity of the state court judgment.[4] Construed liberally, the Amended Complaint's claims against Defendants Haines and Suthers appear to arise out of Defendants' Haines and Suthers' conduct in litigating the *Smith v. Mullarkey* case, rather than from the judgment itself.

Defendants Haines and Suthers move to dismiss the claims against them on the grounds of qualified immunity. Government officials who perform discretionary government functions are entitled to qualified immunity from civil damages, provided their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir.), *cert. denied*, 534 U.S. 1019 (2001); *see also Ramirez v. Dept of Corrections,* 222 F.3d 1238, 1244

---

[4]To the extent that the Plaintiff alleges either the first or second claims for relief against Defendant Haines and Suthers as well as the Supreme Court Defendants, those claims against Haines and Suthers are dismissed under *Rooker-Feldman* for the same reasons set forth above.

(10th Cir. 2000); *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir.1998). A court does not apply a heightened pleading standard with respect to a defendants' assertion of a qualified immunity defense but, rather, reviews the complaint under the traditional standards applicable to a motion to dismiss. *See Currier*, 242 F.3d at 916-917. The Court accepts the plaintiff's well-pleaded allegations as true, and determines whether the plaintiff has alleged facts sufficient to establish both that: (i) the defendant's actions violated a federal constitutional or statutory right, and (ii) that the rights violated were clearly established at the time of defendant's actions. *See Finn v. New Mexico*, 249 F.3d 1241 (10th Cir. 2001).

Here, the Court finds that, even construed liberally and in the light most favorable to the Plaintiff, the Amended Complaint fails to state any cognizable federal constitutional claim against Defendants Haines and Suthers. The Court has carefully canvassed the Amended Complaint for specific references to Defendants Haines and Suthers, and finds the following:

> ¶ 18: "As Attorney General, Defendant Suthers is charged with the competent supervision of all Assistant Attorneys General under his command."
>
> ¶ 19: "Defendant Friedrick C. Haines has been, during all times pertinent to this matter, the Assistant Attorney General of the State of Colorado assigned to represent certain defendants in *Smith v. Mullarkey, supra.*"
>
> ¶45: "The Colorado Attorney General is 'the people's attorney,' charged with vindication of the rights of the citizens he serves (as opposed to representing the government's interests)."
>
> ¶ 46: "In campaign appearances, Attorney General John Suthers has stated that his mission as attorney general is to ensure that 'no man is above the law, and no one is beyond its protection.'"
>
> ¶ 47: "As the attorney of record representing the Justices in *Smith v. Mullarkey*, Defendant Friedrick C. Haines knew or reasonably

should have known that his clients had committed clear violations of federal and Colorado law."

¶ 48: "Defendant Haines either knew or had reason to know that, had he taken reasonable steps to alert the United States Supreme Court that a manifest violation of federal law had occurred, the Court would have been likely to have taken appropriate remedial action."

¶ 49: "Defendant Suthers was personally appraised by Plaintiff of the violations complained of herein via letter, personal contact, and on information and belief, communications transmitted via third parties."

¶ 50: "But for Defendants Suthers' and Haines' failure to act in a competent and professional manner, timely apprising appropriate authorities of the incident complained of, it is on information and belief virtually certain that Plaintiff's access to the courts would have been protected."

¶ 78 [In Plaintiff's Third Claim for Relief]: "Defendant Suthers acted with reckless and deliberate indifference to Plaintiff's constitutional rights. As a direct and proximate result of his acts and omissions, Plaintiff's constitutional rights have been violated."

¶ 79: "Supervisors are liable for participating in or acquiescing to the deprivation of constitutional rights by those over whom they have supervisory control."

¶ 80: "On information and belief, Defendant Suthers knew at some point that one or more of named and/or unnamed Defendants over whom he had supervisory control engaged in conduct contravening clearly established constitutional rights of which a reasonable person in his position would have known."

¶ 81: "Defendant Suthers failed to take appropriate remedial action, thereby acquiescing to said unlawful conduct."

¶ 83: "Further, the constitutional rights Defendant Suthers violated are well-established and long-standing. As a result, his conduct contravened clearly established constitutional rights which reasonable persons would have known. Thus, his course of action was intentional, wanton, malicious, reckless, and oppressive, thereby entitling Plaintiff to punitive damages."

*Docket* # 32.

Turning first to whether these allegations state a claim against Defendant Haines, the Court notes that the Plaintiff has simply alleged that Defendant Haines was aware that his clients – the Supreme Court Defendants – had committed unspecified "clear violations of federal and Colorado law," and that Defendant Haines should have disclosed that fact to the U.S. Supreme Court. Even assuming that this allegation is sufficient to state a § 1983 claim against Defendant Haines for deprivation of the Plaintiff's right of access to the courts,[5] the Plaintiff has not shown that it is "clearly established" that such conduct constitutes a constitutional infringement. To satisfy the "clearly established" prong of the qualified immunity inquiry, the party asserting the claim must show that the contours of the right were sufficiently clear that a reasonable official would have understood that what he was doing would violate that right. *Brosseau v. Haugen*, 543 U.S. 194, 198-199 (2004). This inquiry is made "in the specific context of the case, not as a broad general proposition." *Id.* at 198. Thus, to carry his burden of showing that the

_____

[5]Pursuant to *Scott v. Harris*, 127 S.Ct. 1769, 1774 & n. 4 (2007), it appears that this Court may be <u>required</u> to make a finding as to whether the Plaintiff has pled a claim for deprivation of a constitutional right before it can turn to the question of whether such a right was clearly established. To the extent such a finding is necessary, the Court finds that the Plaintiff has failed to state any constitutional claim against Defendant Haines. Notably, the Plaintiff does not allege that Defendant Haines himself sought the transfer of jurisdiction from the Colorado Court of Appeals to the Colorado Supreme Court, argued in support of such transfer, opposed any request by the Plaintiff to return the matter to the Colorado Court of Appeals, or opposed the Plaintiff's petition for certiorari to the U.S. Supreme Court. Rather, the Plaintiff's apparent theory is that Defendant Haines' failure to simply accept and advocate for the Plaintiff's view of the case constitutes a denial of the Plaintiff's right of access to the Courts. Although denial of right of access to the courts may occur when a state actor <u>conceals</u> facts that, if disclosed, might enable a litigant to seek redress, *see eg.g. Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003), the Plaintiff has not alleged any acts of active concealment by Defendant Haines. Accordingly, the Court finds that the Plaintiff has failed to state a constitutional claim against Defendant Haines.

constitutional right infringed was "clearly established" at the time, the Plaintiff must point to caselaw from the U.S. Supreme Court or 10th Circuit that recognizes the existence of such a right in the "particularized" circumstances of the instant case. *Id.* at 199; *Price-Conelison v. Brooks, 524 F.3d 1103, 1108 (10th Cir. 2008)*, *citing Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir.2007)* .

The Plaintiff has not done so. In his response, the Plaintiff merely refers the Court to the various cases cited in his Amended Complaint as having "self-evident applicability to this case."[6] None of the cases cited in the Amended Complaint clearly establish the contours of any alleged right of access to the courts in the particularized circumstances presented here. Taking the allegations in the light most favorable to the Plaintiff, to show that the right allegedly infringed by Defendant Haines was "clearly established" at the time, the Plaintiff would have to cite to caselaw recognizing a violation of a litigant's constitutional right of access to the courts where a litigant's adversary failed to voluntarily alert a tribunal of an erroneous jurisdictional ruling against the litigant. The Plaintiff cites to no such case, nor has the Court's research revealed any such authority. Accordingly, the Court finds that Defendant Haines is entitled to qualified immunity on the Plaintiff's claims against him, and those claims are dismissed.

Finally, the Court notes that as to the claims against Defendant Suthers, the Plaintiff has not alleged that Defendant Suthers himself engaged in any conduct that directly deprived the

---

[6]The Plaintiff makes practically no mention of Defendants Haines and Suthers in his discussion of qualified immunity in response (**# 48**) to the State Defendants' Motion to Dismiss the Amended Complaint. He addressed Defendants' Haines and Suthers' defense of qualified immunity in slightly more detail in his response (**# 14**) to the State Defendants' initial Motion to Dismiss. The Court has considered both of the Plaintiff's response briefs in considering this issue.

Plaintiff of access to the courts.  It is clear that all of the Plaintiff's claims against Defendant

Suthers are derivative in nature, alleging that Defendant Suthers failed to adequately supervise

Defendant Haines.  Given that the Court has found both that Defendant Haines is entitled to

qualified immunity for any conduct he is alleged to have personally participated in, logically,

Defendant Suthers is entitled to qualified immunity as well.

Accordingly, the State Defendants' Motion to Dismiss the Amended Complaint is

granted.

### D.  Remaining motions

Because the Court's decision above effectively dismisses all claims against all

Defendants, there is no need to reach the remaining motions pending in this case.  Those motions

are denied as moot.

<u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff's Motion for Recusal **(# 43)** is **DENIED**.

Defendant United States' Motion to Dismiss for Lack of Jurisdiction **(# 37)** is **GRANTED**, and

all claims against Defendant United States in the Amended Complaint are **DISMISSED** with

prejudice for lack of subject matter jurisdiction. The State Defendants' Motion to Dismiss for

Lack of Jurisdiction **(# 39)** is **GRANTED**, and all claims against the Supreme Court Defendants

are **DISMISSED** with prejudice for lack of subject matter jurisdiction, and the claims against

Defendants Haines and Suthers are **DISMISSED** with prejudice on the grounds of qualified

immunity.  The Plaintiff's Motion for Judicial Notice **(# 20)** is **GRANTED IN PART**, insofar as

the Court has taken judicial notice of the cited documents, and **DENIED IN PART**, insofar as

the Court has disregarded the Plaintiff's accompanying argument as to the significance of the

cited documents.  The remaining Motions (**# 6, 12, 18, 19**) are **DENIED AS MOOT**.  The Clerk

of the Court is directed to modify docket # 46 to link to docket # 37 instead of docket # 39, and

thereafter, to close this case.

Dated this 11th day of July, 2008

**BY THE COURT:**

Marcia S. Krieger
United States District Judge